550 S.E.2d 73

**In re BRIAN JAMES D.**

No. 28731.

Supreme Court of Appeals of West Virginia.

Submitted April 3, 2001.

Decided June 1, 2001.

Dissenting Opinion of Justice Maynard June 1, 2001.

538

Steven B. Nanners, Esq., Rexroad, Willett & Nanners, Buckhannon, West Virginia, Attorney for Appellant.

Darrell V. McGraw, Jr. Esq., Attorney General, Charleston, West Virginia, C. Carter Williams, Esq., Assistant Attorney General, Petersburg, West Virginia, Attorneys for Appellee.

PER CURIAM:

■ This case is before this Court upon appeal of a final order of the Circuit Court of Upshur County entered on July 13, 2000. Pursuant to that order, the circuit court terminated the parental rights of the appellant and respondent below, Brian L. D.,[1] to his child, Brian James D.[2] In this appeal, the appellant contends that the circuit court erred by terminating his parental rights based solely upon the fact that he committed the felony offense of delivery of a controlled substance. This Court has before it the petition for appeal, the entire record, and the briefs and argument of counsel.[3] For the reasons set forth below, the final order is reversed, and this case is remanded to the circuit court to develop and oversee a plan to reunify the appellant with his child.

I.

Abuse and neglect proceedings were initially instituted against the appellant and Brian James D.'s mother, Amanda K., in May 1999, after Amanda K. was incarcerated as a result of aiding and abetting sexual assault and sexual abuse of an unrelated juvenile.[4] The petition alleging abuse and neglect of Brian James D. contained numerous allegations against Amanda K. but only asserted that the appellant had failed to visit or have any contact with the child. As a result of a dispositional hearing on August 3, 1999, the allegations against both parents were dismissed, and the appellant was granted custody of Brian James D.[5]

On March 29, 2000, a second abuse and neglect petition was filed against the appellant and Amanda K. This petition stated that the appellant had been arrested and charged with delivery of a controlled substance, marihuana. The petition further alleged that the appellant had admitted to selling marihuana from his residence, thereby exposing Brian James D. to drug trafficking and its associated dangers. The petition also noted that the appellant's wife, Donna H. D., had been arrested and charged with the same felony and that Amanda K. remained incarcerated. Upon filing of the petition, Brian James D. was placed in the temporary physical and legal custody of the appellee and petitioner below, the West Virginia Department of Health and Human Resources (hereinafter "DHHR").

An adjudicatory hearing was held on May 3, 2000, at which time the appellant admitted

1. We follow our past practice in child abuse and neglect proceedings and other cases involving sensitive facts and do not use the last names of the parties. *In the Matter of Jonathan P.,* 182 W.Va. 302, 303 n. 1, 387 S.E.2d 537, 538 n. 1 (1989).

2. The parental rights of the child's mother, Amanda K., were also terminated, but she did not appeal the decision and is no longer a party in this case.

3. At this point, we note that the child's guardian ad litem never filed a brief with this Court or appeared before us for oral argument. We find it disconcerting that the guardian has failed to represent his client at this crucial stage of the proceedings. In Syllabus Point 5 of *James M. v. Maynard,* 185 W.Va. 648, 408 S.E.2d 400 (1991), this Court held that "[t]he guardian ad litem's role in abuse and neglect proceedings does not actually cease until such time as the child is placed in a permanent home." In addition, we have advised guardians ad litem that "it is their responsibility to represent their clients in every stage of the abuse and/or neglect proceedings." *In re Christina L.,* 194 W.Va. 446, 454 n. 7, 460 S.E.2d 692, 700 n. 7 (1995). We once again emphasize that a guardian ad litem's duty to represent a child includes filing briefs and appearing before this Court for oral argument when an appeal has been filed.

4. Pursuant to a plea agreement, Amanda K. is serving a three-to-fifteen-year sentence in the state penitentiary.

5. We note that the appellant was not adjudicated as an abusive or neglectful parent in the first proceeding.

that he had sold drugs from his residence while Brian James D. was present. Thus, the circuit court found that the appellant had abused and neglected Brian James D. by exposing him to drug trafficking and its associated dangers as asserted by the DHHR. At the conclusion of the adjudicatory hearing, the appellant moved for leave to obtain a psychological evaluation regarding his fitness as a parent. The motion was granted, and a dispositional hearing was scheduled for June 7, 2000.

The dispositional hearing was continued to July 5, 2000, because the appellant's psychological evaluation was not yet complete. In the meantime, the DHHR filed a child case plan recommending that the parental rights of both the appellant and Amanda K. be terminated. In making this recommendation, the DHHR noted the possibility that the appellant, like Amanda K., might be incarcerated as a result of the criminal charges pending against him.

During the dispositional hearing on July 5, 2000, the psychological evaluation of the appellant completed by William Fremouw, Ph. D., was presented to the court. While Dr. Fremouw reported that the appellant denied the seriousness of his situation, he stated that the appellant has "no diagnosable psychiatric condition." Dr. Fremouw further stated that, "[t]he social summary dated 5/31/00 indicated that [the appellant] underwent a drug and alcohol assessment and was randomly drug tested on several occasions in 1999. These tests were negative for drugs and the assessment did not indicate drug or alcohol problems. This information does support [the appellant's] contention that he is not a regular drug or alcohol user."

Thereafter, the circuit court terminated the appellant's parental rights. Subsequently, the appellant pled guilty to two counts of delivery of a controlled substance and was given a one-to-five-year sentence for each count. However, the appellant was granted home confinement on the first count after serving 120 days in jail to be followed by five years probation on the second count. This appeal followed.

## II.

██ We begin our analysis of this case by setting forth our standard of review. In Syllabus Point 1 of *In the Interest of Tiffany S. Marie*, 196 W.Va. 223, 470 S.E.2d 177 (1996), this Court held that:

Although conclusions of law reached by a circuit court are subject to *de novo* review, when an action, such as an abuse and neglect case, is tried upon the facts without a jury, the circuit court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether such child is abused or neglected. These findings shall not be set aside by a reviewing court unless clearly erroneous. A finding is clearly erroneous when, although there is evidence to support the finding, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed. However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.

With this standard in mind, we now consider the parties' arguments.

██ The appellant contends that the circuit court erred by terminating his parental rights based solely upon the fact that he was charged with and admitted to selling marihuana from his apartment, at times, while his child was present. After carefully reviewing and examining the record in this case, we agree. In Syllabus Point 7 of *In re Emily*, 208 W.Va. 325, 540 S.E.2d 542 (2000), this Court held that " '[a] natural parent of an infant child does not forfeit his or her parental right to the custody of the child merely by reason of having been convicted of one or more charges of criminal offenses.' Syllabus point 2, *State ex rel. Acton v. Flowers*, 154 W.Va. 209, 174 S.E.2d 742 (1970)." In other words, incarceration, *per se*, does not warrant the termination of an incarcerated parent's parental rights. At the same time, we have also acknowledged that an individual's incarceration may be considered along with other factors and circumstances

impacting the ability of the parent to remedy the conditions of abuse and neglect. *Emily,* 208 W.Va. at 342, 540 S.E.2d at 559.

The final order in this case, however, indicates that the appellant's parental rights were terminated because of his arrest for delivery of a controlled substance. The State did not allege that the appellant is addicted to or uses drugs, nor did the State assert that the appellant's parenting abilities were impaired by selling marihuana. In fact, during the dispositional hearing, Sarah Crum, the child protective service worker who handled this case for the DHHR, testified that the primary reason she was recommending that the appellant's parental rights be terminated was because the appellant was arrested for trafficking a controlled substance. Ms. Crum further testified that:

> I cannot think of any service that we could provide to [the appellant] that are going to correct the problem. [The appellant] has continually stated that he does not do drugs. We've had him tested for that, it came back negative. We had drug and alcohol assessment done and it came back and said that he had no problem with that. And I can think of no services that are going to correct the situation of selling drugs.

In addition, Dr. Fremouw reported that the results of random drug testing of the claimant in 1999 were negative indicating that the appellant does not have drug or alcohol problems.

■ This Court takes very seriously the fact that the appellant exposed his child to the substantial risks inherent in dealing drugs, and recognizes that such conduct clearly constituted abuse and neglect sufficient to trigger remedial action by the circuit court. We disagree, however, with DHHR's contention that the appellant's conduct in this

case demonstrates that "there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future. . . . ," as required by W.Va. Code § 49–6–5(a)(6). While Ms. Crum testified that she did not envisage any services that could be provided to curb the appellant's drug dealing, we observe that he is now subject to a lengthy term of home confinement and probation, which presumably will provide the necessary supervision to ensure that the criminal conduct that brought rise to the present proceeding will not be repeated. Moreover, we stress that the appellant is now on notice that any repeat of such activity will likely warrant action terminating his parental rights.[6]

The DHHR maintains that the circuit court did not err in terminating the appellant's parental rights not only because criminal charges were pending against him, but also because of the child's need for permanency. This Court is certainly aware of the fact that this child was placed in at least six different homes before his second birthday. However, with the exception of his current placement which resulted from this abuse and neglect proceeding, the evidence shows that these placements occurred while the child was in the custody of Amanda K. Without question, this child deserves permanency in his life. Having carefully examined the record, we conclude that this child can receive the permanency he needs in his father's custody. As discussed in detail above, the record shows that the allegations of abuse and neglect in this case stemmed solely from the appellant's arrest, and that his parental rights were terminated for that reason alone. In accordance with our case law holding that a criminal conviction *per se* does not warrant the termination of parental rights, we find that the circuit court erred by terminating

---

6. The circuit court in terminating the appellant's parental rights did so in part based upon Dr. Fremouw's observation that appellant did not expressly acknowledge that his drug dealing was a "bad decision." Our review of Dr. Fremouw's report, however, indicates that this observation was made in connection with an initial interview, and that at a subsequent interview the appellant succinctly admitted that his behavior in this regard was "stupid." Thus, so far as the circuit court's decision to terminate parental rights was predicated upon a factual finding that the appellant refused to acknowledge the irresponsible nature of his drug-dealing activity, we find it clearly erroneous. *See* Syllabus Point 2, in part, *Walker v. West Virginia Ethics Comm'n,* 201 W.Va. 108, 492 S.E.2d 167 (1997) ("we review the circuit court's underlying factual findings under a clearly erroneous standard. . . .").

the parental rights of the appellant to his child.

■ Having found that the appellant's parental rights were erroneously terminated, we remand this case to the circuit court to immediately develop and oversee a plan for reunifying the appellant with his child as promptly as practicable. According to the record in this case, Brian James D. has been in the custody of the DHHR for over a year. This Court has previously determined that in these circumstances, a gradual transition of custody is needed to give both the parent and child a sufficient adjustment period. *See James M. v. Maynard*, 185 W.Va. 648, 408 S.E.2d 400 (1991); *Honaker v. Burnside*, 182 W.Va. 448, 388 S.E.2d 322 (1989).

Therefore, for the reasons set forth above, the final order of the circuit court of Upshur County entered on July 13, 2000, is reversed, and this case is remanded to the circuit court to immediately develop and oversee a plan to reunify James Brian D. with his father as promptly as practicable.

Reversed and Remanded.

MAYNARD, Justice, dissenting:

(Filed June 1, 2001)

I dissent because I do not believe that the circuit court terminated the appellant's parental rights only because he was arrested for delivery of a controlled substance. Moreover, I believe that the majority ignored the best interests of the child in this case.

The dispositional order shows that the circuit court's decision to terminate the appellant's parental rights was based on substantially more than the fact that the appellant had been arrested for delivery of a controlled substance and was facing the possibility of incarceration. It is clear that the appellant's failure to appreciate the seriousness of his felonious actions was an important factor in the circuit court's decision. During his psychological evaluation, the appellant told Dr. Fremouw that he was selling drugs to support his family, and he did not think he would get caught or that his son would be taken away. The appellant said he guessed he was "advertising to the wrong people." He repeatedly described his involvement in drugs as merely a business decision.

The appellant completed drug and alcohol assessments administered by Dr. Fremouw in an invalid manner suggesting that he was not being honest. In addition, his test scores showed a high level of resistance to treatment. It is apparent that the appellant never thought he was exposing his child to any danger and would not have ceased his illegal drug activity had he not been arrested. Unlike the majority, I do not believe that the appellant's acknowledgment of his actions as "stupid" means that he has accepted responsibility for his conduct. Instead, the appellant's attitude leads me to conclude, as I am sure the circuit court concluded, that it is very likely that the appellant will engage in drug activity in the future.

The dispositional order also indicates that the circuit court considered the child's need for permanency and concluded that it would be in the child's best interests to terminate the appellant's parental rights. The circuit court's decision in this regard is consistent with this Court's vast case law holding that the best interests of the child are paramount in abuse and neglect proceedings. *See In re George Glen B. Jr.*, 207 W.Va. 346, 355, 532 S.E.2d 64, 73 (2000) ("[W]hen a petition alleging abuse and neglect has been filed, a circuit court has a duty to safeguard the child and provide for his or her best interests."); Syllabus Point 5, *Carter v. Carter*, 196 W.Va. 239, 470 S.E.2d 193 (1996) ("In visitation as well as custody matters, we have traditionally held paramount the best interests of the child."); *Michael K.T. v. Tina L.T.*, 182 W.Va. 399, 405, 387 S.E.2d 866, 872 (1989) ("[T]he best interests of the child is the polar star by which decisions must be made which affect children.").

Although the majority recognized the child's need for permanency, I believe the real best interests of the child were disregarded. The record in this case shows that Brian James D. lived in six different homes, presumably with at least six different caretakers, all before his second birthday. He simply has never had any permanency in his life and as a result, is developmentally delayed. In addition, the child has exhibited symptoms of fetal alcohol syndrome.

This Court has held that "courts are not required to exhaust every speculative possibility of parental improvement before terminating parental rights where it appears that the welfare of the child will be seriously threatened...." Syllabus Point 7, in part, *In the Interest of Carlita B.*, 185 W.Va. 613, 408 S.E.2d 365 (1991). I firmly believe that this child will be exposed to the dangers of drug trafficking again if he is returned to his father's custody, which the majority concedes will warrant yet another abuse and neglect proceeding. The evidence in the record shows that this child needs permanency in his life now. Therefore, I would affirm the final order of the circuit court terminating the appellant's parental rights.

Accordingly, for the reasons set forth above, I respectfully dissent. I am authorized to state that Justice Davis joins me in this separate opinion.