**FILED**

**November 17, 2022**

released at 3:00 p.m.
EDYTHE NASH GAISER, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

**STATE OF WEST VIRGINIA
SUPREME COURT OF APPEALS**

*In re* **V.B. and A.B.**

**No. 22-0008** (Boone County 19-JA-115 and 19-JA-116)

**MEMORANDUM DECISION**

Petitioner father, L.B. ("Father"),[1] appeals the Circuit Court of Boone County's December 16, 2021 order terminating his parental rights to V.B. and A.B. ("children").[2] Upon review, we find that the circuit court had no jurisdiction over A.B. because she was in a subsidized guardianship at the time of the petition's filing and, therefore, was not exposed to any of the alleged abuse and neglect. Therefore, we vacate the circuit court's dispositional order, in part, regarding A.B. We find, however, that the circuit court did not err in terminating Father's parental rights to V.B. This case satisfies the "limited circumstances" requirement of Rule 21(d) of the West Virginia Rules of Appellate Procedure for resolution in a memorandum decision.

In a July 2018 order, prior to the filing of the petition at issue, the Circuit Court of Boone County terminated the parental rights of the children's mother because her abuse of and addiction to "controlled substances or drugs" seriously impaired her parenting skills. At the conclusion of the case in December 2018, Father retained legal and physical custody of V.B., who was almost three years old, while the younger child, A.B., entered a

---

[1] Father appears by counsel Matthew M. Hatfield. The Department of Health and Human Resources appears by counsel Patrick Morrisey and Andrew Waight. Moriah N. Myers appears as the children's guardian ad litem, but was not the guardian ad litem for the circuit court proceedings.

[2] We use initials where necessary to protect the identities of those involved in this case. *See* W. Va. R.A.P. 40(e). *In re K.L.*, 241 W. Va. 546, 548 n.1, 826 S.E.2d 671, 673 n.1 (2019) (using initials to refer to child parties).

1

subsidized guardianship with her foster parents, T.B. and his wife.[3] Father agreed to the guardianship.

The Department of Health and Human Resources ("DHHR") began investigating the safety of V.B. at Father's home in May 2019. On June 25, 2019, the DHHR completed a "WV Safety Assessment and Management System" form regarding V.B. titled a "Family Functioning Assessment" (hereinafter "Safety Assessment"). The Safety Assessment included information that Father allowed the mother contact with V.B., yet the mother was not in a caretaker role. The Safety Assessment concluded the child was not maltreated or unsafe and found no impending dangers.

In September of 2019, the DHHR filed a new petition against Father seeking immediate custody of V.B., who was four at the time, and also included A.B. in the heading of the case, although the petition did not include any allegations that A.B. was abused or neglected.[4] The DHHR alleged that while Father knew the mother's rights were terminated and she "still ha[d] a drug problem," he allowed the mother "around [V.B.] and in the home." The petition asserted that V.B. "disclosed domestic violence" between her parents and watched "her mother shoot up." V.B. believed the mother's "shots" caused the mother to be angry and start fights with Father. The petition also explained that the mother got into an argument with Father's mother ("grandmother") at Father's house and pushed her.

At the first adjudicatory hearing on November 4, 2019, the circuit court heard evidence regarding the petition's allegations. A DHHR employee explained that she previously visited Father's residence after the mother's parental rights were terminated, but could not substantiate abuse and neglect until the DHHR filed the petition at issue. Before filing the petition, she reminded Father "numerous times" that the mother's rights were terminated and that he was not being a protective caregiver. Father admitted to the witness that he knew the mother still had a "drug problem," but he allowed her around V.B. The grandmother also informed the DHHR employee that the mother pushed her.

The DHHR employee stated further that when she interviewed V.B., the child said the mother lived down the road but "comes and goes at her dad's house whenever she wants." She testified that V.B. said that "she didn't know why [her mother and Father] fought, but that it scared her" and that her mother takes "medicine, and her mom takes

---

[3] The December 12, 2018 order dismissing the earlier abuse and neglect case against Father erroneously stated that both children were placed in a subsidized guardianship, rather than only A.B. At the time of her placement, A.B. was an infant and had serious medical issues.

[4] The petition named T.B as a "non-maltreating" respondent and noted he had "subsidized guardianship of [A.B.]."

shots in her arm" in a closet[5] and showed the DHHR employee the bend of her arm. V.B. described to the DHHR employee that her mother "[got] very angry" when she took those shots and she sometimes started fights with Father. V.B. said "a lot of people come in and out of her dad's house that she doesn't know, and it scares her, but none of them have ever bothered her, she just doesn't like them there." The DHHR employee professed her concern that Father would continue to allow the mother around "even after he says that he wouldn't, and that the mother has a severe drug addiction that she still hasn't kicked from the last petition." She explained that her interview with V.B. led to the filing of the petition: after V.B. "disclosed something as severe as her seeing her mom shoot up, after her parental rights were terminated, then we petitioned the [c]ourt."

The circuit court found that the DHHR met its burden regarding V.B., then stated, "I think it's very depressing and sad that we go through this once, [the mother] is an obvious drug addict, and [F]ather does little to nothing to protect the child from the mother again. It's horrible." The circuit court adjudicated only V.B. as an abused and neglected child, explaining that "the Department is going to have to make some kind of amendment, because I'm not making a finding with respect to [A.B.], because [A.B.] was not present [in Father's home] at the time [of the petition's filing]."

At the hearing, Father requested an improvement period, which the guardian ad litem and the DHHR opposed. The circuit court denied the motion. The guardian ad litem also notified the court that he planned to seek termination of Father's parental rights.

After the hearing, the circuit court entered an adjudicatory order on November 26, 2019, including the following findings of fact and conclusions of law:

> Whereupon, the Court, in consideration of the pleadings filed herein, argument of counsel and evidence presented, and in conjunction with reports, and recommendations of record, does make the following FINDINGS of FACT and CONCLUSIONS of LAW as to whether the children were abused and/or neglected based on the conditions existing at the time of the filing of the petition and proven by clear and convincing evidence:
>
> The Court FINDS that the Adult Respondent [Father] has abused and neglected the children as alleged in the petition. The Court, therefore ADJUDICATES the children[6] as abused

---

[5] The DHHR employee later explained that the closet was at the mother's home.

[6] The references to "the children" appear to be in error, as the circuit court had determined that it lacked evidence that A.B. was abused and neglected.

and neglected children, pursuant to West Virginia Code § 49-4-602.

On December 2, 2019, the DHHR filed an amended petition, adding an additional allegation that Father abandoned A.B. and "made no efforts to have any contact with her." After the DHHR filed the amended petition, the court held status, adjudicatory, and dispositional hearings over the next 23 months. The circuit court never entered an order adjudicating A.B. as abused or neglected. Father filed a written motion requesting a post-adjudicatory improvement period in March of 2020. The circuit court denied this motion on June 14, 2021, on the record at a dispositional hearing. While the guardian ad litem participated in the case and attended hearings, pursuant to the record before us, he never filed a report with the court. The record also does not indicate that a child or family case plan was ever filed, but during the final dispositional hearing in November 2021, the DHHR's attorney, Father's attorney, and a DHHR employee appeared to agree that the family case plan was filed, although no one seemed certain of the date.

During a dispositional hearing in July 2021, the DHHR introduced video in which Father purportedly sold controlled substances to a confidential informant during a controlled drug buy.[7] In the recording, which apparently occurred before the DHHR filed the initial petition in this case, Father instructed V.B. to get in the house with her mother. The circuit court also heard evidence that when the DHHR visited Father's home, even after V.B. was removed, the mother appeared; Father reported that the mother helped him with the grandmother, who needed care. At the final dispositional hearing on November 8, 2021, Father testified, "it's hard to say you can't be around your biological mother. . . . And as long as I didn't feel like there was no danger that [her mother] was giving to her, I don't feel that I was in the wrong." He went on, stating, "But now, if it was told to me by the judge, 'Hey you're not allowed to have her around you,' or my lawyer said 'She's not allowed to be around her,' then, yeah." When the guardian ad litem questioned Father whether "it never crossed your mind" that maybe the mother should not be around the children, Father explained that "Your rights are terminated, no, she shouldn't be around her, but shouldn't that be under the obligation of a parent to say what's right and what's wrong for their child?"

Also at the final dispositional hearing, the court denied Father's oral motion for a post-dispositional improvement period after hearing evidence that the mother remained around Father. The court further determined that Father had not corrected the matter that

---

[7] The circuit court allowed Father and his counsel to review the video during a June 2021 dispositional hearing, during which a law enforcement officer testified about the contents of the video. At the July 2021 dispositional hearing, when the DHHR asked the court to admit the video into evidence, Father objected to its admission, calling it hearsay. When the circuit court then admitted the video, the court's admission of the video excluded the portions of the video where Father did not appear.

led to the initial filing of the petition, i.e., the mother at Father's home, because when the DHHR visited the home, the mother was there. The circuit court found that the conditions that led to the filing of the petition could not be corrected in the near future, and it was in the best interests of the children to terminate the parental rights of Father. The Amended Order ("dispositional order") filed on December 16, 2021, reflected these findings, and Father now appeals.[8]

On appeal from a final order in an abuse and neglect proceeding, this Court reviews the circuit court's findings of fact for clear error and its conclusions of law de novo. Syl. pt. 1, *In re Cecil T.*, 228 W. Va. 89, 717 S.E.2d 873 (2011). "'However, a reviewing court may not overturn a finding simply because it would have decided the case differently, and it must affirm a finding if the circuit court's account of the evidence is plausible in light of the record viewed in its entirety.'" *Id.*, in part (quoting Syl. pt. 1, in part, *In Interest of Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177 (1996)).

While Father first argues that the circuit court never adjudicated A.B. as an abused or neglected child before terminating his parental rights to her, we need not address this alleged error. Based on the uncontested facts in the record regarding A.B., we find that the circuit court did not have subject matter jurisdiction over the child, and the portion of the order terminating Father's parental rights to A.B. should be vacated. A circuit court does not have jurisdiction over a child unless she is "an 'abused child' or a 'neglected child'" pursuant to the definitions in West Virginia Code § 49-1-201, and a finding of abuse and neglect "must be based upon the conditions existing at the time of the filing of the abuse and neglect petition." Syl. pt. 8, in part, *In re C.S.*, ___ W. Va.___, 875 S.E.2d 350 (2022). *See generally id.* (determining the court lacked jurisdiction over the child, who was not abused or neglected, as the child lived outside of the parent's home in a permanent legal guardianship for five years before the filing of the petition; the parent's drug addiction did not harm or threaten the child; and no evidence of abuse or neglect existed regarding the child in the guardian's home). Here, A.B. lived outside of Father's home with her guardians in a subsidized guardianship since sometime shortly after her birth; when the DHHR filed both the petition and the amended petition, she was not harmed or threatened by the mother's drug use or Father's failure to protect her from the mother, and no allegations of abuse or neglect were made against her guardians. Likewise, the court heard no evidence of abuse or neglect of A.B. during this case and specifically mentioned that she was not present during the abuse and neglect of V.B. While the amended petition alleged that Father abandoned A.B., the allegations fail to meet any of the statutory definitions for an abused or neglected child pursuant to West Virginia Code § 49-1-201. For these reasons, the circuit court had no jurisdiction over A.B.

---

[8] The original order terminating Father's parental rights failed to include A.B. The Amended Order added A.B.

Turning to Father's remaining assignments of error, we find no merit. In relation to the court's adjudication of V.B. as an abused and neglected child, Father argues, without citation, that the DHHR failed to meet its burden of proving, by clear and convincing evidence, that V.B. was abused and/or neglected. The DHHR has the burden of proof in abuse and neglect proceedings. Syl. pt. 3, *In re C.S.*, ___ W. Va.___, 875 S.E.2d 350 (2022). Thus, it must prove by clear and convincing evidence that the child is abused and neglected, based on the conditions "existing at the time of the filing of the petition." *See* W. Va. Code § 49-4-601(i) (setting forth the requirements for a child to be adjudicated as abused or neglected). A court may find that a child is abused or neglected if a parent fails to protect the child. *See In re A.L.C.M.*, 239 W. Va. 382, 392, 801 S.E.2d 260, 270 (2017) ("[T]he statutes governing abuse and neglect proceedings allow a finding of abuse to be based upon a parent's knowledge that another person is harming his/her child.").

We will not disturb the circuit court's finding that the DHHR met its burden to prove that V.B. was abused and neglected. Father argues that because the order terminating the mother's parental rights did not specifically prevent her from seeing V.B., he did not abuse or neglect V.B. by allowing the mother to be around her. He also contends that the DHHR's *knowledge* that he allowed V.B. and her mother contact prior to the filing of the petition should have prevented the circuit court from finding V.B.'s interactions with the mother equated to abuse and neglect by him. These arguments fail to acknowledge the escalation of the mother's behavior and drug use around V.B., and Father's failure to protect V.B. from the mother. The circuit court heard ample evidence at the adjudicatory hearing to find that Father abused and neglected V.B. based on his failure to protect the child from the mother: Father admitted to the DHHR employee that he knew that the mother still used drugs and yet he allowed her around V.B.; Father fought with the mother in front of V.B., and they hit each other; and V.B. told the DHHR employee that the mother takes "shots" in the closet, indicating the location of the shot in the bend of her arm. Furthermore, the court heard testimony that V.B. told the DHHR worker that after her mother takes the "shots," she gets angry, which sometimes begins the fights with Father that occur in front of V.B. The circuit court also heard testimony that the mother fought with grandmother while V.B. was at the house. In light of this evidence, the court's finding that the DHHR met its burden of proving that V.B. was abused and neglected was not clearly erroneous.

Also in his first assignment of error, Father argues that the adjudicatory order regarding V.B. failed to include the required findings of fact and conclusions of law. We disagree. Rule 27 of the Rules of Procedure for Child Abuse and Neglect Proceedings requires the circuit court to "make findings of fact and conclusions of law, in writing or on the record" when determining whether a child is abused or neglected. *See also* W. Va. Code § 49-4-601 (requiring "findings of fact and conclusions of law as to whether the child is abused or neglected" which must be "incorporated into the order of the court."). Here, at the adjudicatory hearing, the circuit court made a finding on the record regarding that Father "does little to nothing to protect the child from the mother," who is "an obvious drug addict," then determined that V.B. was abused and neglected. The November 26, 2019

6

order adjudicating V.B. as abused and neglected generally referenced the testimony, pleadings, and evidence presented. The order also noted the recommendations on the record at the adjudicatory hearing and found that Father abused and neglected V.B. "as alleged in the petition." While we recognize that the adjudicatory order is "somewhat limited in [its] findings of fact and conclusions of law," the circuit court nevertheless "provided ample findings on the record" to support its adjudication of V.B. as an abused and neglected child and its corollary determination that Father was an abusive and neglectful parent. *In re T.W.*, No. 21-0574, 2022 WL 123562, at \*6 (W. Va. Jan. 12, 2022) (memorandum decision).

Father further alleges that the circuit court violated his due process rights because it did not require the DHHR to provide timely discovery, specifically the Safety Assessment. Rule 10(b) of the Rules of Procedure for Child Abuse and Neglect Proceedings provides general discovery requirements. We previously found that delayed discovery in an abuse and neglect proceeding was not a due process violation. *See In re S.D.*, No. 13-0917, 2014 WL 629507, at \*2 (W. Va. Feb. 18, 2014) (memorandum decision). Here, the circuit court repeatedly rescheduled hearings, delaying the proceedings to allow the DHHR time to comply with its discovery obligations. The DHHR ultimately provided the discovery at issue—the Safety Assessment—to Father before the dispositional hearing. While Father argues that not having the Safety Assessment prevented him from fully participating in the adjudicatory hearing, we disagree.[9] Certainly, the Safety Assessment provided basic information that the DHHR knew Father allowed V.B. around the mother. Still, that document provided no useful, additional information that was not also provided by the DHHR's witness at the adjudicatory hearing: that the DHHR knew the Father allowed the mother around V.B. during the period before DHHR filed the petition. Furthermore, the Safety Assessment provides no defense to the allegations that Father allowed the mother essentially unfettered access to V.B., who at times saw the mother use drugs and fight with Father. Nevertheless, while we find no reversible error in this case, the Court stresses that this Rule still requires the DHHR to provide discovery to the respondent in an abuse and neglect proceeding within the timeframes specified. *See* W. Va. R. P. Child Abuse & Neglect Proceeds. 10(b) & (d), 12.

Father also asserts that the circuit court erred by terminating his parental rights without a child or family case plan or guardian ad litem report,[10] however, it does not

---

[9] Father knew that the DHHR investigated him before it filed the petition, and more than fifty days passed between the filing of the petition and the adjudicatory hearing. We have no evidence that Father requested discovery from the DHHR or objected to holding the adjudicatory hearing due to a lack of discovery during this timeframe.

[10] West Virginia Code § 49-4-604(a) requires that the DHHR file a child's case plan after the circuit court "finds a child to be abused or neglected." *See also* W. Va. R. P. Child Abuse & Neglect Proceeds. 28 & 29. Rule 18a of the Rules of Procedure for Child Abuse

7

appear that he objected to proceeding without a plan or report.[11] While the governing statutes and rules relating to the termination of parental rights require the filing of a case plan and a guardian ad litem report, Father "cannot establish how his defense to the DHHR's seeking termination of his parental rights at disposition was in any way hampered" by the lack of a plan or report. *See In re T.W.*, No. 21-0574, 2022 WL 123562, at *5 (W. Va. Jan. 12, 2022) (memorandum decision) (finding that petitioner failed to show "how this matter could have possibly been impacted by the provision of a report"). Unquestionably, the guardian ad litem sought termination of Father's parental rights as early as the November 2019 adjudicatory hearing of V.B. Furthermore, the parties seemed to believe a family case plan had been filed. At the dispositional hearing in November 2021, the DHHR's attorney, Father's attorney, and a DHHR employee appeared to agree that the family case plan was filed, although no one seemed certain regarding the date. Father points to no place in the record where he objected to proceeding without either of these documents. Under the particular facts and circumstances of this case, we find that the failure to file a formal, written child or family case plan or a guardian ad litem report "did not substantially disregard or frustrate the abuse and neglect process." *See In re I.D.*, No. 20-0962, 2021 WL 5326512, at *7 (W. Va. Nov. 16, 2021) (citing Syl. pt. 5, *In re Edward B.*, 210 W. Va. 621, 558 S.E.2d 620 (2001)). The lack of this plan and report are not prejudicial errors requiring reversal. Nonetheless, the DHHR, the guardian ad litem, and the circuit court are cautioned to fully comply with our statutes and Rules of Procedure for Child Abuse and Neglect Proceedings in future cases to ensure that required case plans and a guardian ad litem report are filed properly with the court.

We finally turn to Father's arguments regarding the circuit court's denial of his requests for an improvement period and the dispositional order terminating his parental rights. "The standard of proof required to support a court order limiting or terminating parental rights to the custody of minor children is clear, cogent and convincing proof." Syl. pt. 6, *In re: Willis*, 157 W. Va. 225, 207 S.E.2d 129 (1973). A circuit court may terminate parental rights "without the use of intervening less restrictive alternatives when it is found that there is no reasonable likelihood . . . that conditions of neglect or abuse can be substantially corrected." Syl. pt. 5, in part, *In re Kristin Y.*, 227 W. Va. 558, 712 S.E.2d 55 (2011) (per curiam) (quotations and citation omitted). Father's complaints that the court erred by denying him an improvement period lack merit. Improvement periods are left to the court's discretion. *See In re Tonjia M.*, 212 W. Va. 443, 448, 573 S.E.2d 354, 359 (2002) (per curiam). To obtain an improvement period under West Virginia Code § 49-4-610, the parent must first demonstrate that he or she is likely to fully participate in

---

and Neglect Proceedings requires a guardian ad litem to submit a report to the circuit court and the parties at least five days before the dispositional hearing.

[11] While Father's counsel mentioned the lack of a guardian ad litem report to the circuit court at the final dispositional hearing, he did not object to proceeding without the report.

the improvement period. A court should only grant an improvement period if it would serve the child's best interests. Syl. pt. 3, in part, *State ex rel. W. Va. Dep't of Health & Hum. Res. v. Dyer*, 242 W. Va. 505, 836 S.E.2d 472 (2019). As we have noted, the "[f]ailure to acknowledge the existence of the problem" makes "the problem untreatable" and, in turn, an improvement period is "an exercise in futility at the child's expense." *In re Charity H.*, 215 W. Va. 208, 217, 599 S.E.2d 631, 640 (2004) (per curiam) (quotations omitted). While Father passed drug screens and was employed during part of the proceedings, which is commendable, he remained in contact with the mother, who often visited his home. Even when he testified at the dispositional hearing, Father failed to acknowledge any problem with allowing the mother contact with V.B. Therefore, the court did not abuse its discretion by denying Father an improvement period.

Because the court made the requisite findings, based upon ample evidence and the allegations in the petition, to support termination of Father's parental rights, we find no error in its termination of Father's parental rights to V.B. *See* W. Va. Code § 49-4-604(c)(6) (permitting a circuit court to terminate parental rights upon finding that there is no reasonable likelihood that the conditions of abuse and neglect can be substantially corrected in the near future and when necessary for the child's welfare). As the circuit court explained, Father repeatedly allowed the mother around his home, even after V.B. had been removed from the home, and Father testified that he did not understand how a child could be prohibited from being around her biological mother. The dispositional order specifically noted that "the matters that led to the filing of the [p]etition," that is, the presence of the mother, had "not been corrected."[12] The court explained that "seemingly" every time the DHHR visited Father, the mother was there. Accordingly, we find no error in the circuit court's termination of Father's parental rights to V.B., as the evidence before the circuit court showed no reasonable likelihood that the conditions of abuse and neglect could be substantially corrected in the near future given Father's failure to acknowledge the danger the mother posed to the child.[13]

---

[12] Father also argues that the circuit court erred in considering the controlled buy video in which Father appears, citing *In re Brian James D.*, 209 W. Va. 537, 550 S.E.2d 73 (2001) (per curiam), for the proposition that the court cannot terminate his parental rights "solely" based on arrest for delivery of a controlled substance. While the circuit court referred to the video in the hearing and the dispositional order as "the most damning evidence," the court terminated father's parental rights for additional reasons, including Father's failure to protect V.B. from her mother. Furthermore, this video, apparently taken before the petition was filed, is more evidence that the Father allowed the mother around V.B., because he instructed V.B. to return inside to "mommy."

[13] While Father alleges certain factual discrepancies by the circuit court, still "the circuit court's account of the evidence is plausible in light of the record viewed in its entirety." *See* Syl. pt. 1, in part, *In re Tiffany Marie S.*, 196 W. Va. 223, 470 S.E.2d 177. Although the dispositional order indicates that Father failed to participate in or complete

For the foregoing reasons, we vacate, in part, the circuit court's December 16, 2021 order terminating Father's parental rights as it relates to A.B. and affirm that same order, in part, as it relates to the termination of Father's parental rights to V.B.

Vacated, in part, and Affirmed, in part

**ISSUED:**     November 17, 2022

**CONCURRED IN BY:**

Justice Elizabeth D. Walker
Justice Tim Armstead
Justice C. Haley Bunn

**DISSENTING:**
Chief Justice John A. Hutchison
Justice William R. Wooton

No. 22-0008 – *In re* V.B. and A.B.

HUTCHISON, Chief Justice, concurring, in part, and dissenting, in part, joined by Justice Wooton:

In this case, the majority upholds the termination of the petitioner father's parental rights to V.B while acknowledging that (1) "the adjudicatory order is 'somewhat limited in [its] findings of fact and conclusions of law;'" (2) the DHHR failed to provide discovery to the father within the timeframes specified in Rule 10 of the West Virginia Rules of Procedure for Child Abuse and Neglect Proceedings; (3) the child or family case plan required by West Virginia Code § 49-4-604(a) (2020) may have never been filed; (4) the guardian ad litem failed to submit a report with the circuit court as required by Rule 18a of the Rules of Procedure for Child Abuse and Neglect Proceedings; (5) the dispositional

_____

an improvement period when he was never granted one, the order also correctly states that it denied Father's motions in this regard. Similarly, discrepancies in the circuit court's order regarding Father's request for visitation were adequately cured by the court's subsequent acknowledgment that Father failed to follow up on his earlier request for visitation and his concession of this point in the brief, where he concedes that he last addressed visitation to the circuit court in January 2020. For the reasons we have previously stated, these minor factual issues do not overcome the ample evidence before the circuit court supporting the termination of Father's parental rights.

order states that the father failed to participate in or complete an improvement period when in fact father repeatedly sought an improvement period and filed a written motion for an improvement period but was never given one; (6) the circuit court granted the father visitation with V.B., but he was never allowed to visit her even though he satisfied the circuit court's requirement of three consecutive clean drug screens; and (7) "the most damning evidence" relied upon by the circuit court to terminate the father's parental rights to V.B. was a video purporting to show the father selling drugs to a confidential informant despite the fact that the abuse and neglect petition upon which the father was adjudicated contained absolutely no allegation that he was selling drugs and that was not the basis for his adjudication as an abusive and neglectful parent. The majority's decision to shrug off these clear statutory and procedural errors and just tell the circuit court to do better the next time not only violates the due process rights of a parent, but also sends the message to our lower courts that it is sometimes okay to just ignore the rules. It is not. Accordingly, I dissent to the majority's decision to the extent it upholds the circuit court's termination of the father's parental rights to V.B.[14]

All persons, even those accused of abusing and neglecting children, "enjoy [the] constitutional guarantee[] of due process of law which must be respected by the state, its legislature, and the courts." *In re Edward B.,* 210 W. Va. 621, 631, 558 S.E.2d 620, 630 (2001). Indeed, "this Court long ago recognized the constitutional dimensions of abuse and neglect proceedings under both the federal and state constitutions." *Id.* In syllabus point one of *In re Willis*, 157 W.Va. 225, 207 S.E.2d 129 (1973), this Court declared that

> [i]n the law concerning custody of minor children, no rule is more firmly established than that the right of a natural parent to the custody of his or her infant child is paramount to that of any other person; it is a fundamental personal liberty protected and guaranteed by the Due Process Clauses of the West Virginia and United States Constitutions.

As a result, this Court has made clear that "the Rules of Procedure for Child Abuse and Neglect Proceedings and the related statutes detailing fair, prompt, and thorough procedures for child abuse and neglect cases are not mere general guidance; rather, they are stated in mandatory terms and vest carefully described and circumscribed discretion in our courts, intended to protect the due process rights of the parents as well as the rights of the innocent children." *Edward B.*, 210 W. Va. at 632, 558 S.E.2d at 631; *see also In re J.G., II,* 240 W. Va. 194, 204, 809 S.E.2d 453, 463 (2018) ("The procedural and substantive requirements of West Virginia Code § 49-4-601 *et seq.*, the Rules of Procedure for Child Abuse and Neglect, and our extensive body of caselaw are not mere guidelines. The

---

[14] I concur with the majority's decision insofar as it vacates the portion of the circuit court's order terminating the father's parental rights to A.B. because the circuit court lacked subject matter jurisdiction over that child.

11

requirements contained therein are not simply window dressing for orders which substantively fail to reach the issues and detail the findings and conclusions necessary to substantiate a court's actions."). Consequently, we have held that

> [w]here it appears from the record that the process established by the Rules of Procedure for Child Abuse and Neglect Proceedings and related statutes for the disposition of cases involving children adjudicated to be abused or neglected has been substantially disregarded or frustrated, the resulting order of disposition will be vacated and the case remanded for compliance with that process and entry of an appropriate dispositional order.

*Edward B.,* 210 W. Va. at 624, 558 S.E.2d at 623; syl. pt. 5.

In this case, the circuit court's failure to set forth any findings of fact in its November 26, 2019, adjudicatory order to support its conclusion that the father abused and neglected V.B., was an error that, in and of itself, warrants remand for compliance with West Virginia Code § 49-4-601 (2019). That statute mandates that "[a]t the conclusion of the adjudicatory hearing, the court shall make a determination based upon the evidence and shall make findings of fact and conclusions of law as to whether the child is abused or neglected and whether the respondent is abusing, neglecting. . . *all of which shall be incorporated into the order of the court.*" W. Va. Code § 49-4-601(i) (emphasis added); *see also* W. Va. R. Proc. for Child Abuse and Neglect Proceeds. 27 (requiring "order of adjudication, including findings of fact and conclusions of law"). General conclusory statements like those used in the circuit court's order in this case do not satisfy this requirement. Rather, "[a]dequate findings must be made in order to protect the rights of litigants and to facilitate review of the record by an appellate court." *Edward B.,* 210 W. Va. at 632, 558 S.E.2d at 631 (additional citation and quotations omitted). In other words, the circuit court's order "must be sufficient to indicate the factual and legal basis for the [court]'s ultimate conclusion so as to facilitate a meaningful review of the issues presented." *Province v. Province*, 196 W. Va. 473, 483, 473 S.E.2d 894, 904 (1996). In the absence of adequate findings of facts and conclusions of law, we have found that the adjudicatory order must be vacated, and the case remanded for compliance with the statute. *See In re H.L. and M.L.,* 243 W. Va. 551, 556, 848 S.E.2d 376, 381 (2020) (reversing and remanding because adjudicatory order contained "no specific findings of fact or conclusions law regarding Mother's alleged status as a 'battered parent'"); *In re K.B.-R. and L.R.*, No. 20-0734, 2021 WL 983076, *3 (W. Va. March 16, 2021) (memorandum decision) ("[B]ecause the circuit court failed to make adequate findings of fact to enable sufficient appellate review, we vacate the circuit court's. . . adjudicatory order and remand the matter with instructions to forthwith issue a new order containing the findings of fact and conclusions of law necessary to establish whether the children were abused and/or neglected").

Likewise, the fact that the circuit court terminated the father's parental rights to V.B. based on a matter for which he was not adjudicated as being abusive or neglectful requires that this case be remanded. The record shows that after the initial adjudicatory hearing which resulted in the father being adjudicated as an abusive and neglectful parent, the DHHR came into possession of a video which purported to show the father selling drugs to a confidential informant. The DHHR's possession of this video was not made known to the father until the first disposition hearing, which was held on December 16, 2019. At the next disposition hearing on January 6, 2020, the video was viewed by all parties in chambers according to the circuit court's order entered after that hearing and the matter was continued. At the third disposition hearing on June 14, 2021, the DHHR presented testimony from Eric Eversole, a deputy with the Boone County Sheriff's Office. He testified extensively about his involvement with the controlled drug buy and the contents of the video. The matter was again continued. The video was viewed for a second time at the next hearing, which was held on July 14, 2021, and "was placed in evidence" according to the September 20, 2021, order entered thereafter. At the final disposition hearing held on November 8, 2021, the father testified and the DHHR attempted to cross-examine him about the contents of the video, but the father refused to answer those questions based upon the advice of counsel.[15]

As the record demonstrates, the video was a key piece of evidence relied upon by the DHHR to seek termination of the father's parental rights to V.B. Yet, the DHHR never sought to amend the abuse and neglect petition to add allegations that the father was selling drugs and exposing V.B. to his criminal activity. Moreover, the circuit court did not exercise its "inherent authority to compel the Department to amend its petition to encompass the evidence or allegations" pursuant to Rule 19 of the Rules of Procedure for Abuse and Neglect Proceedings.[16] Syl. Pt. 5, in part, *In re Randy H.*, 220 W. Va. 122, 640 S.E.2d 185 (2006). Instead, the circuit court seized upon this "most damning evidence," concluded that "the video demonstrates that [the father] was apparently willing to engage in illegal conduct in the presence of the child," and terminated his parental rights.

---

[15] Although the controlled drug buy allegedly occurred in 2019, the petitioner had not yet been prosecuted on any charges stemming therefrom.

[16] Rule 19(b) of the West Virginia Rules of Procedure for Abuse and Neglect Proceedings provides, in pertinent part:

> If new allegations arise after the final adjudicatory hearing, the allegations should be included in an amended petition rather than in a separate petition in a new civil action, and the final adjudicatory hearing shall be re-opened for the purpose of hearing evidence on the new allegations in the amended petition.

This Court has previously "take[n] notice of the plain error permeating the disposition wherein the circuit court terminate[s] the parental rights on the basis of allegations and issues which were never properly made subject to the adjudication" and remanded for amendment of the petition. *In re Lilith H.,* 231 W. Va. 170, 180, 744 S.E.2d 280, 290 (2013). And, in this very term of Court, we reversed the termination of a father's parental rights predicated on substance abuse because he was never adjudicated on that basis, once again declaring that "termination of parental rights may not be fundamentally premised on conditions of abuse and/or neglect upon which a parent has not been properly adjudicated." *In re K.L.,* --- W.Va. ---, --- S.E.2d ---, Slip op. at 19 (No. 22-0081 November 16, 2022).

Although this Court has clearly required that proper adjudicatory orders be entered and refused to uphold the termination of parental rights based on issues that were not the subject of adjudication, the majority turns a blind eye to these errors in this case, as well as the other procedural missteps that occurred, in what I can only surmise to be an effort to provide permanency for V.B. While the best interest of the child is always the polar star in abuse and neglect cases, this Court should not compound the errors made by the circuit court by simply ignoring significant due process violations in order to achieve the desired outcome. Obviously, if this case were remanded for compliance with the applicable statutes and procedural rules, the circuit court would need to consider the evidence of abuse and neglect reflected in the record. Having done so, I suspect that the court would reach the same result and terminate the father's parental rights to V.B. While the majority wants to take a short cut and simply affirm the circuit court's decision, I cannot overlook the numerous procedural errors which infringed upon the father's due process rights—rights that this Court is constitutionally bound to protect. Therefore, I respectfully dissent to majority's decision to affirm the termination of the father's parental rights to V.B.

I am authorized to state that Justice Wooton joins me in this separate opinion.

14